# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAYEDA ABDULLAH ALAWI, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES (USCIS),<br><br>Defendant. | Case No.  1:20-cv-00608-NONE-SAB<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT<br><br>(ECF No. 40) |

Currently before the Court is Plaintiffs' motion for leave to file a first amended complaint. (ECF No. 40.)[1] Having considered the moving and opposition papers, the submitted exhibits, as well as the Court's file, the Court issues the following order granting the motion for leave to amend.

## I.

## BACKGROUND

On April 28, 2020, Fayeda Abdullah Alawi ("Alawi"), Qasem Salah Ali Saleh ("Qasem"), and Gamilah Salah Ali Saleh ("Gamilah") (collectively "Plaintiffs")[2] filed this action against the U.S. Citizenship and Immigration Services ("USCIS"); Kenneth T. Cuccinelli, Acting

---

[1] All references herein to pagination of electronically filed documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

[2] According to the proffered dates of birth in the complaint, while Plaintiff Gamilah was a minor at the time of filing, no Plaintiff is a minor as of the date of this order. (See ECF No. 2 at 6.)

1

1  Director of USCIS; Lynn Q. Feldman, Fresno Field Office Director at USCIS; Monica Toro,
2  Fresno District Director at USCIS; the U.S. Department of Homeland Security; the U.S.
3  Department of State; the National Visa Center; and the U.S. Embassy- Djibouti (collectively
4  "Defendants"). (ECF Nos. 1, 2.) Plaintiffs challenged USCIS's first revocation of Plaintiff
5  Alawi's certificate of citizenship; and sought processing by the Department of State of USCIS-
6  approved I-130 petitions. (Compl., ECF No. 2.) Plaintiffs' complaint brought causes of action
7  for: (1) violation of the Immigration and Nationality Act, 8 U.S.C. § 1453; (2) violation of the
8  Administrative Procedure Act (APA); (3) denial of rights and privileges as a U.S. national, 8
9  U.S.C. § 1503; (4) violation of procedural due process under the Fifth Amendment; (5) violation
10 of substantive due process under the Fifth Amendment; (6) writ of mandamus requiring further
11 processing of I-130 and adjudication of the immigrant visa of Qasem Salah Ali Saleh; (7) writ of
12 mandamus requiring further processing of I-130 and adjudication of immigrant visa of Gamilah
13 Salah Ali Saleh; (8) declaratory relief under the Declaratory Judgment Act; and (9) costs under
14 the Equal Access to Justice Act, 5 U.S.C. § 504; 28 U.S.C. § 2412.

15       No scheduling order has issued in this action. A motion to dismiss was filed on
16 September 4, 2020, and is currently pending. (ECF No. 20.) The motion to dismiss argues that
17 counts one, two, three, and four are moot because a certificate of citizenship has now been
18 approved by USCIS. (Id. at 3-4.) The motion to dismiss also argues that counts five, six, and
19 seven, are also moot given the National Visa Center ("NVC") has received the I-130 petition s at
20 issue. (Id. at 4.) Finally, the motion to dismiss argues the remaining claims fail to state a claim
21 on which relief can be granted. (Id. at 5.)

22       Given Plaintiffs' indication they were considering whether to seek leave to file an
23 amended complaint, on March 16, 2021, the District Judge ordered Plaintiffs to file a status
24 report on or before May 14, 2021, stating whether they intend to seek leave to amend. (ECF No.
25 35.) On May 14, 2021, Plaintiffs filed a status report proffering they were thereby seeking leave
26 to amend, requesting forty-five (45) days to amend, and additionally proffering the parties may
27 alternatively file a notice of settlement within the same forty-five (45) day period. (ECF No. 36.)
28 Given the filing did not indicate whether Defendants oppose Plaintiffs' proposed amendment, the

1  Court ordered Defendants to file a statement indicating whether they would oppose the Court
2  granting leave to file an amended complaint.  On May 19, 2021, Defendants file a statement
3  indicating they oppose Plaintiffs' stated intent to move to amend the complaint due to futility of
4  amendment.  (ECF No. 38.)  On May 20, 2021, the Court ordered Plaintiffs to file a motion for
5  leave to amend within fourteen (14) days.  (ECF No. 39.)

6  On June 3, 2021, Plaintiffs file the motion to amend that is the subject of this order.
7  (ECF No. 40.)  Plaintiffs set the motion for hearing on August 4, 2021.  (Id.)  On June 7, 2021,
8  the Defendants filed an opposition to the motion to amend.  (ECF No. 42.)  On July 28, 2021,
9  Plaintiffs filed a reply to the motion to amend.  (ECF No. 45.)  On July 29, 2021, pursuant to
10 Local Rule 230(g), the Court found the motion suitable for decision without oral argument and
11 vacated the August 4, 2021 hearing.  (ECF No. 46.)

## II.

## LEGAL STANDARD

14 Twenty-one days after a responsive pleading or a motion to dismiss is filed, a party may
15 amend only by leave of the court or by written consent of the adverse party.  Fed. R. Civ. P.
16 15(a)(1)-(2).  "Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice
17 so requires.' "  Amerisource Bergen Corp. v. Dialysis West, Inc., 465 F.3d 946, 951 (9th Cir.
18 2006) (quoting Fed. R. Civ. P. 15(a)); see also Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d
19 1048, 1052 (9th Cir. 2003) (noting leave should be granted with "extreme liberality") (quoting
20 Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir.2001)).  Leave to amend
21 under Rule 15 is "within the sound discretion of the trial court," and "[i]n exercising this
22 discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on
23 the merits, rather than on the pleadings or technicalities."  United States v. Webb, 655 F.2d 977,
24 979 (9th Cir. 1981).

25 In determining whether to grant leave to amend, a court is to consider five factors: "(1)
26 bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5)
27 whether the plaintiff has previously amended his complaint."  Nunes v. Ashcroft, 375 F.3d 805,
28 808 (9th Cir. 2004).  The factors are not weighed equally, and "[f]utility of amendment can, by

itself, justify the denial of a motion for leave to amend." Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995). Undue delay, "by itself . . . is insufficient to justify denying a motion to amend." Owens, 244 F.3d at 712 (quoting Bowles v. Reade, 198 F.3d 752, 757-58 (9th Cir. 1999)). "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." Eminence Capital, 316 F.3d at 1052. "Prejudice is the 'touchstone of the inquiry under rule 15(a).' " Id. (citations omitted). "Absent prejudice, or a strong showing of any of the remaining [ ] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." Id.[3]

### III.
### DISCUSSION

Plaintiffs argue that consideration of the five factors of bad faith, undue delay, prejudice to the opposing party, futility of amendment, and previous amendment, support granting leave to amend. (Pls.' Mot. Amend ("Mot") 6-12, ECF No. 40.) Defendants only oppose the motion on grounds of futility. (Defs.' Opp'n Mot. Amend ("Opp'n"), ECF No. 42.) Thus the Court will only briefly address the other four factors.

**A.   Consideration of the Factors of Bad Faith, Undue Delay, Prejudice to the Opposing Party, and Previous Amendment Weigh in Favor of Granting Leave to Amend**

The Court finds no evidence before it that Plaintiffs are acting in bad faith and Defendants do not address Plaintiffs' arguments that there is no bad faith. (Mot 6-8.) The Court finds this factor weighs in favor of granting the motion.

As for undue delay, Plaintiffs proffer they have not unduly delayed and in fact exhausted efforts to resolve the outstanding issues with Defendants absent amending – specifically, seeking settlement as to the finality of Alawi's citizenship. (Mot. 8, citing ECF Nos. 34, 36.) Plaintiffs argue that the motion was filed timely and in response to facts that occurred after the initial

---

[3] A "magistrate judge's decision to *grant* a motion to amend is not generally dispositive; whether the *denial* of a motion to amend is dispositive is a different question entirely. Just as 'it is of course quite common for the finality of a decision to depend on which way the decision goes,' . . . so the dispositive nature of a magistrate judge's decision on a motion to amend can turn on the outcome." Bastidas v. Chappell, 791 F.3d 1155, 1164 (9th Cir. 2015) (quoting Bullard v. Blue Hills Bank, 135 S. Ct. 1686, 1694 (2015)). Any party may seek reconsideration of this order by the district judge within fourteen days of the issuance of this order. Local Rule 303.

1  complaint, citing most recently the fact that Alawi was ordered to appear at the USCIS Field
2  Office on January 20, 2021.  (Mot. 8.)  In the first status report cited by Plaintiffs, that was filed
3  March 15, 2021, the Plaintiffs first proffered that: "With respect to the Court's concern as to
4  when Plaintiffs will file an amended complaint, as issues are evolving over the next thirty days,
5  Plaintiffs would ask that the Court set one more date for a status hearing to see if parties cannot
6  resolve these issues [and if the] parties cannot then Plaintiffs would need fifteen (15) days to file
7  an amended complaint."  (ECF No. 34 at 2.)  In the second cited status report that was filed on
8  May 14, 2021, Plaintiffs stated that if a settlement is not reached, Plaintiffs "hereby" sought
9  leave to amend through such status report, and requested forty-five (45) days to amend their
10 complaint, stating the law office was "still facing the rippling effects of closures and in-office
11 limitations due to COVID-19."  (ECF No. 36 at 2.)  On May 20, 2021, the undersigned required
12 Plaintiffs to file the motion to amend with fourteen days, and on June 3, 2021, Plaintiffs filed the
13 motion to amend, however, Plaintiffs did not set the hearing until August 4, 2021, well after the
14 minimum time to notice such hearing.  (ECF Nos. 39, 40.)  Thus, while there may have been
15 some delay, Defendants do not argue there has been any *undue* delay, and accordingly, the Court
16 finds this factor weighs in favor of granting leave to amend.

17        As for prejudice, Plaintiffs argue that Defendants would not be prejudiced, which is the
18 primary consideration when denying leave to amend.  Defendants do not argue they are or would
19 be prejudiced, and the Court finds this factor weighs in favor of amendment.

20        Plaintiffs have not previously amended the complaint, and proffer they have gone
21 through exhaustive efforts to try and resolve the issues of Alawi's citizenship to no avail.  (Mot.
22 12.)  The Court finds this factor weighs in favor of granting leave to amend.

23        The Court now turns to the question of futility.  Futility alone can "justify the denial of a
24 motion for leave to amend."  Bonin, 59 F.3d at 845.

25        **B.     Consideration of Futility Weighs in Favor of Granting Leave to Amend**

26        Plaintiffs proffer that whether Alawi is a U.S. citizen presently remains a question of law
27 before the Court and one which can be conclusively determined by the Court pursuant to 8
28

U.S.C. § 1503 and 28 U.S.C. § 2201.[4]  (Mot. 3.)  Specifically, Plaintiffs submit that Alawi's citizenship has been called into question on four separate occasions: (1) in 2005, when USCIS initially approved Alawi's citizenship; (2) several years later when USCIS revoked it on August 15, 2019 (Compl. ¶ 50); (3) a year later, after filing the complaint, when USCIS rescinded its revocation on August 13, 2020 (ECF No. 41 at 2); and (4) most recently, when USCIS requested Alawi appear at a USCIS field office in 2021 to have a " new certificate of citizenship issued," which Plaintiffs contend calls into question the validity of her initial certificate of citizenship and status as a U.S. citizen.  (Mot. 3.)  Plaintiffs argue that a claim does not become moot simply because the Defendant has chosen to repeal the very act which gave rise to the controversy, City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 287 (1982).[5]  (Mot. 4.)

---

[4] 8 U.S.C.§ 1503 provides:

**(a) Proceedings for declaration of United States nationality**

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 against the head of such department or independent agency for a judgment declaring him to be a national of the United States, except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding. An action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege and shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is conferred upon those courts.

8 U.S.C. § 1503. 28 U.S.C. § 2201 provides for declaratory relief: "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

[5] As both parties cite to City of Mesquite, the Court will excerpt the relevant portion from the Supreme Court opinion:

> On April 5, 1976, to accommodate the proposal of Aladdin's Castle, Inc. (Aladdin), to open an amusement center in a shopping mall, the city exempted from the prohibition against operation of amusement devices by unattended children certain amusement centers, the features of which were defined in terms of Aladdin's rules, as long as children under the age of *seven* were accompanied by an adult. Thereafter, Aladdin entered into a long-term lease and made other arrangements to open a center in the mall. In August, however, its application for a license was refused because the Chief of Police had concluded that Aladdin's parent corporation was connected with criminal elements. Aladdin then brought suit in a Texas state court and obtained an injunction requiring the city to issue it a license forthwith. The Texas court found that neither Aladdin nor its parent corporation had any connection with criminal elements and that the vagueness in the ordinance

Plaintiffs argue that USCIS's nullification of its former order of cancellation states in part that Alawi's "N-600 approval be reaffirmed," but "will inform [Alawi] of the date, time, and place to receive [a] new Certificate of Citizenship." (Mot. 4-5.) Plaintiffs submit that this actually renders the order of cancellation of citizenship nonexistent, and would require Alawi's initial certificate of citizenship be valid and have full force and effect, yet Defendants insist it is not and are requiring her to be issued a "new Certificate of Citizenship." (Mot. 5; Ex. B, ECF No. 41 at 6.) On December 22, 2020, four months after revoking its order cancelling Alawi's citizenship, USCIS ordered Alawi to report to a USCIS field office on January 20, 2021, in order to "replace" her previously revoked certificate of naturalization – which Plaintiffs argue should not require replacement if USCIS ordered null its revocation. (Mot. 5; Ex. B.)

---

contravened both the Texas and the Federal Constitutions.

On February 7, 1977, less than a month after the city had complied with the state-court injunction by issuing the license to Aladdin, the city adopted a new ordinance repealing Aladdin's exemption, thereby reinstating the 17-year age requirement, and defining the term "connections with criminal elements" in some detail. Aladdin then commenced this action in the United States District Court for the Northern District of Texas, praying for an injunction against enforcement of the new ordinance. After a trial, the District Court held that the language "connections with criminal elements," even as defined, was unconstitutionally vague, but the District Court upheld the age restriction in the ordinance . . .the Court of Appeals affirmed the former holding and reversed the latter.

. . . the city now asks us to reverse the judgment of the Court of Appeals. After we noted probable jurisdiction, 451 U.S. 981, 101 S.Ct. 2312, 68 L.Ed.2d 838, Aladdin advised us that the ordinance reviewed by the Court of Appeals had been further amended in December 1977 by eliminating the phrase "connections with criminal elements." The age restriction, however, was retained . . . A question of mootness is raised by the revision of the ordinance that became effective while the case was pending in the Court of Appeals. When that court decided that the term "connections with criminal elements" was unconstitutionally vague, that language was no longer a part of the ordinance. Arguably, if the court had been fully advised, it would have regarded the vagueness issue as moot. It is clear to us, however, that it was under no duty to do so.

It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. Such abandonment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power. In this case the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated. The city followed that course with respect to the age restriction, which was first reduced for Aladdin from 17 to 7 and then, in obvious response to the state court's judgment, the exemption was eliminated. There is no certainty that a similar course would not be pursued if its most recent amendment were effective to defeat federal jurisdiction. We therefore must confront the merits of the vagueness holding.

City of Mesquite, 455 U.S. at 286–90.

1      Plaintiffs submit that they seek leave to amend to allege new facts which continue to be
2 inconsistent with the law and give further rise to Plaintiffs' claims. (Mot. 5-6.)

3      Defendants respond that the motion should be denied as this matter has been moot since
4 August of 2020, when USCIS nullified its previous cancellation of Alawi's certificate of
5 citizenship, and thus approved Alawi's N-600 application for a certificate of citizenship. (Opp'n
6 2.) As a consequence of such action, Defendants state that Alawi is a United States citizen, and
7 the U.S. Department of State subsequently approved the pending applications for Alawi's
8 children, such that their status has also been favorably resolved.[6]  Therefore, no application
9 remains pending before any United States immigration agency.  Based on these circumstances,
10 Defendants argue this case is moot, as there is no available form of relief that this Court can
11 provide, Fed. R. Civ. P. 12(b)(1), 12(b)(6); Nome Eskimo Cmty. v. Babbitt, 67 F.3d 813, 815
12 (9th Cir. 1995) ("[i]f one of these required prerequisites to the exercise of judicial power
13 disappears while the litigation is pending, then in the absence of an applicable doctrinal
14 exception, the judicial branch loses its power to render a decision on the merits of the claim")[7].
15 (Opp'n 2.)

16      Defendants argue no case or controversy as related to the previous cancellation of the
17 certificate of citizenship remains, and Alawi does not challenge the agency's decision to revoke
18 its prior cancellation. (Id.) Instead, Alawi only seeks to amend the complaint to address the
19 possibility of a future revocation of her certificate of citizenship, and request the motion for leave
20 to amend be denied because the proposed cause of action is too speculative to establish a live
21 controversy or a claim upon which relief may be granted, Bell Atl. Corp. v. Twombly, 127 S. Ct.
22 1955, 1965 (2007). (Opp'n 2.) Specifically, Defendants contend that Alawi's desire to stave off
23 possible future adverse agency action does not rise above the speculative level; there is no

---

[6] Plaintiffs proffer that as of April 2021, both of Plaintiff Alawi's children's I-130 petitions have been adjudicated and visas were issued (ECF No. 36), and Plaintiffs consider this issue resolved, and would amend the complaint reflecting such facts. (Mot. 4.)

[7] In Nome, plaintiffs sought a "declaration that plaintiffs owned rights to the sea floor, an injunction prohibiting lease sales without plaintiffs' consent, and an accounting for any money the Secretary obtained from leases." 67 F.3d at 815. "The day after plaintiffs sued, the court was notified that the lease sale had been cancelled for lack of bids, and that there was no immediate prospect of another, similar lease sale [which] was the end of the 'case,' constitutionally and practically." Id.

1 allegation that USCIS has taken or has given any indication of taking an adverse action toward
2 Alawi; Alawi is situated no differently from any other individual who presently holds a
3 certificate of citizenship; and although the possibility always exists that any such certificate-
4 holder could face a possible revocation by the agency, a plaintiff would have to allege additional
5 facts to raise the proposed cause of action above a speculative level. (Opp'n 4.)

6       Defendants contend Alawi's proffer that USCIS might "unilaterally revoke her
7 citizenship," is only a vague concern because if USCIS was to someday revisit the question of
8 Alawi's citizenship, it would have to follow the procedures required of the agency for
9 revocation. (Opp'n 3.) Specifically, when USCIS previously revoked Alawi's citizenship, it
10 first issued a Notice of Intent to Revoke, setting forth concerns about Alawi's marital status that
11 could affect her eligibility for citizenship, Alawi was given an opportunity to respond, and
12 USCIS initially found, in a written decision, that Alawi did not overcome the eligibility
13 concerns. (Opp'n 3, citing ECF No. 3 at 32, 40.) After USCIS nullified its cancellation decision
14 in Alawi's favor resulting in Alawi's present status as a United States citizen, Defendants proffer
15 that a decision by USCIS to undergo the process of cancelling Alawi's certificate of citizenship
16 "would not be based on whimsy or ping pong," but the agency would have to set forth written
17 reasons , and then Alawi would again have an opportunity to respond.

18       Defendants argue there is no indication in the record or proposed amendments to the
19 complaint that any of these steps are contemplated by the agency, and Alawi's reference to
20 concern of "heretonow unknown agency action" (Mot. 9), and other concerns, are insufficient, as
21 unknown future agency actions are inadequately specific and concrete to establish federal court
22 jurisdiction under Rule 12. (Opp'n 3.) Defendants further argue that this case does not fall
23 within the exception for otherwise moot claims that are "capable of repetition, yet evading
24 review," because the mere possibility of repetition is still too speculative and Alawi cannot
25 demonstrate that such a revocation would evade judicial review. (Id. citing Spencer v. Kemna,
26 523 U.S. 1, 17–18 (1998) ("Petitioner's case satisfies neither of these conditions. He has not
27 shown (and we doubt that he could) that the time between parole revocation and expiration of
28 sentence is always so short as to evade review. Nor has he demonstrated a reasonable likelihood

that he will once again be paroled and have that parole revoked").) Defendants proffer that if on the slim chance Alawi's certificate of citizenship is revoked at some time in the future, Alawi can refile a new complaint at that time. (Opp'n 3-4.)

As to Alawi's argument that the agency has "played ping-pong" with the certificate of citizenship (Mot. at 11), Defendants counter that Alawi's theory that the past "ping-pong" will be repeated is also speculative, and the mere fact that the agency one time revoked is not enough. (Opp'n 4.) As to Alawi's argument that absent an order from the court Alawi's citizenship is not barred from future revocation, Defendants argue that this circumstance is true of every holder of a certificate of citizenship or naturalized citizen, as USCIS can undertake revocation action against any holder of an immigration benefit or status – but only insofar as USCIS comports with statutory and regulatory mechanisms for doing so, subject to judicial review. Finally and alternatively, Defendants submit that what Plaintiffs are seeking is the Court's review of past agency actions, articulating faults with USCIS's historical handling of the case; but the ultimate result in this case was favorable to Alawi and there is no redress that the Court can provide. (Opp'n 4.)

Plaintiffs reply that the Defendants' position that this matter is moot is not supported by the facts or the law, and that Defendants have failed to meet the "heavy" burden of demonstrating mootness with potentially repeatable conduct. (Pls.' Reply Supp. Mot. Amend ("Reply"), ECF No. 45.)

The Court finds that while Defendants' arguments are persuasive, and the Court is somewhat skeptical of the reasonable likelihood of the revocation and the framing of some of the more recent facts as presented by Plaintiffs, the Court agrees with Plaintiffs that Defendants have not satisfied the heavy burden of persuasion needed to demonstrate mootness in light of the extremely liberal policy underlying allowance of amendment under Rule 15. See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 190 (2000) ('[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.") (citing United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203,

1  (1968)); <u>Sinclair v. San Jose Unified Sch. Dist. Bd.</u>, No. 20-CV-02798-LHK, 2021 WL 2948871,
2  at *6 (N.D. Cal. July 13, 2021) ("Yet, based on Defendants' arguments here, neither standing nor
3  mootness concerns outweigh the Court's 'extreme liberality' in granting leave to amend in the
4  absence of delay, bad faith, dilatory motive, failure to cure prior deficiencies, or undue
5  prejudice."). While Defendants arguments regarding mootness due to no current adverse agency
6  action have merit, given the state of all of the facts presented, and the underlying issues of law,
7  amendment is the proper course at this stage, and Defendants can present such arguments in a
8  motion to dismiss following amendment when the complaint is filed and considered under all of
9  the then facts and presentation of the law. <u>SAES Getters S.p.A. v. Aeronex, Inc.</u>, 219 F. Supp.
10  2d 1081, 1086 (S.D. Cal. 2002) ("[A]n amendment is 'futile' only if it would clearly be subject
11  to dismissal . . . [and] [w]hile courts will determine the legal sufficiency of a proposed
12  amendment using the same standard as applied on a Rule 12(b)(6) motion . . . such issues are
13  often more appropriately raised in a motion to dismiss rather than in an opposition to a motion
14  for leave to amend.") (citations omitted). Further, Defendants have not provided any case law
15  that is directly on point or directly analogous to the situation here.

16  Specifically, while Plaintiffs state Defendants "insinuate" there may be a fifth change, the
17  Court largely agrees with Defendants that this is simply the natural state of any holder of a
18  certificate of citizenship or naturalized U.S. citizen. <u>See</u> 8 U.S.C. § 1451 (revocation of
19  naturalization); 8 U.S.C. § 1453 ("The Attorney General is authorized to cancel any certificate of
20  citizenship" for specified reasons); <u>United States v. Dang</u>, 488 F.3d 1135, 1139 (9th Cir. 2007)
21  (The denaturalization statute, 8 U.S.C. § 1451(a), provides that denaturalization may be
22  commenced if the citizen's naturalization was (1) 'illegally procured,' or (2) 'procured by
23  concealment of a material fact or by willful misrepresentation.' "). Further, any form of
24  citizenship can be voluntarily relinquished through certain acts. <u>See</u> 8 U.S.C. § 1481(a) ("A
25  person who is a national of the United States whether by birth or naturalization, shall lose his
26  nationality by voluntarily performing any of the following acts with the intention of
27  relinquishing United States nationality.").

28  However, of significance, Plaintiffs argue that Alawi was born abroad to a U.S. citizen

parent, thus automatically deriving citizenship when she entered the U.S. on August 21, 2004, 8 U.S.C. § 1431(a). This provision provides that: "A child born outside of the United States automatically becomes a citizen of the United States when all of the following conditions have been fulfilled: (1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization[;] (2) The child is under the age of eighteen years[; and] (3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence." 8 U.S.C. § 1431. Plaintiffs further argue that derivative citizenship is a right which cannot be revoked because it is an intangible and irreplaceable birthright.

These propositions highlight to the Court that even though the cancellation of the certificate of citizenship has been "nullified," there may very well be issues underlying that can be adjudicated by the Court. The Ninth Circuit's discussion in Smith-Baltiher is instructive:

> The government's argument is incorrect. Smith was entitled to U.S. citizenship, along with its rights and privileges, from the moment of birth, not upon the issuance of a certificate of citizenship or any other formal determination by the INS or any other government official. *See* 8 U.S.C. § 1401(g) (stating that derivative citizens are "nationals and citizens of the U.S. *at birth*" (emphasis added)); *Miller v. Albright,* 523 U.S. 420, 429–30, 118 S.Ct. 1428, 140 L.Ed.2d 575 (1998) (plurality opinion) (holding that 8 U.S.C. § 1401(g) provides for citizenship at birth); *Solis–Espinoza v. Gonzales,* 401 F.3d 1090, 1092–94 (9th Cir.2005) (same). In short, if Smith is entitled to U.S. citizenship as derived through his mother, his right to be treated as a citizen is not dependent upon the award of a certificate. He was a citizen from the moment of his birth. *See* 8 U.S.C. § 1401(g).
>
> The government next argues that whether a person born abroad derives U.S. citizenship from a parent is a question to be decided exclusively by the Attorney General, or his designated successor, the Secretary of the Department of Homeland Security, and may not be reviewed by a court, or, even more so, by a jury. The government's contention that only the INS may decide the question of Smith's derivative citizenship is simply incorrect.

United States v. Smith-Baltiher, 424 F.3d 913, 920–21 (9th Cir. 2005); see also United States v. Covarrubias, No. 318CR00099LRHCLB, 2020 WL 1170216, at *3 (D. Nev. Mar. 11, 2020) ("The concept of derivative and acquired citizenship is complex, with many potential avenues for a defendant to prove that he is a citizen of the United States."); Carino v. Garland, 997 F.3d

1053, 1056 (9th Cir. 2021) ("[D]erivative citizenship is determined under the law in effect at [the] time the critical events giving rise to eligibility occurred . . . We analyze Carino's derivative citizenship claim pursuant to section 321(a) of the INA . . . the provision in effect from the time Carino began residing in the United States in 1991 until Carino's eighteenth birthday in 1999.") (quotation marks omitted) (alterations in original).

Plaintiffs further argue that the language in the August 13, 2020 letter from USCIS shows that USCIS has the unilateral discretion to decide that Alawi's evidence is no longer "plausible, and this letter of nullification of the order of cancellation leaves open the possibility of future revocation. The letter states the following in relevant part:

> In Islamic jurisprudence, there are two types of divorces: revocable (*raj'i*) and irrevocable (*ba'in*). Revocable divorce means that the husband has the right to take back the wife during the three-menstrual cycle waiting period (*'idda*) that follows all consummated marriages. In irrevocable divorces, by contrast, he does not have this right. However, following the end of the waiting period from a revocable divorce, the divorce would then be considered irrevocable, if the husband did not take his wife back during that period. (*When Does a Revocable Divorce Become Final?*, DAR AL-IFTA AL-MISSRIYYAH, https://www.daralifta.org/Foreign/ViewFatwa.aspx?ID=6112 (The Law Library of Congress USCIS Request No. 139 dated March 26, 2014.) Due to the lack of probative evidence to show that the husband has not exercised his right to take the wife back during the waiting period, USCIS in practice only accepts irrevocable divorces from Yemen for immigration cases.
>
> Although you did not submit an irrevocable divorce with any of your filings, based on your declaration regarding the circumstances under which your divorce took place, your age at the time, that the fact that Salah Ali Saleh Kessem did not revoke the divorce during the waiting period and the fact that your ex-husband passed away on December 29, 2005, ***it is plausible*** that your revocable divorce, by the passage of time, became irrevocable at the completion of the three month waiting period. In light of your unique facts, ***USCIS now accepts*** your divorce as sufficient evidence that you qualify as an unmarried child of a U.S. citizen and would qualify for Certificate of Citizenship after entry of the United States.

(ECF No. 41 at 4 (emphasis added by Plaintiffs.)

Plaintiffs argue this language does not inspire confidence that another administration or another officer at USCIS won't consider this same evidence to be less than plausible when a federal district court is not looking over their shoulder. (Reply 5.)  8 U.S.C. 1453 ("The

13

Attorney General is authorized to cancel any certificate of citizenship … if it shall appear to the Attorney General's satisfaction that such document … was illegally or fraudulently obtained."). (ECF No. 41 at 4.) The Eleventh Circuit case of Belleri is potentially instructive as to the issues presented here:

> The United States argues that a remand is unnecessary because we can decide, as a matter of law, that Belleri is an alien, but we disagree. To determine whether Belleri obtained derivative citizenship, as he contends, a court must decide the effect, under Colombian law, of the Conciliation Agreement between Belleri's parents . . . Belleri argues that he obtained derivative citizenship in 1999 and that the cancellation of his certificate of citizenship, even if uncontested, does not revoke his citizenship . . . We VACATE the order that dismissed Belleri's complaint, and we REMAND for the district court to determine whether Belleri is a citizen of the United States and, if Belleri is an alien.

Belleri v. United States, 712 F.3d 543, 548-49 (11th Cir. 2013).

The Court does not find Plaintiffs' argument that her citizenship has "bounced back and forth at the change in policy in the administration *four* times," overly convincing given only one of these four actions was clearly a revocation.[8] Specifically, it is not clear to the Court how when USCIS requested Alawi appear at a USCIS field office in 2021 to have a " new certificate of citizenship issued," it is a rescission and nullifying of the previous revocation as framed by Plaintiffs (Reply 4). However, given the facts and law the Court has discussed above, the Court cannot find Defendants have demonstrated amendment would be futile. Again, Defendants have not provided the Court with any case law that is directly on point or directly analogous to the situation here pertaining to citizenship. Dang, 488 F.3d at 1138 ("American citizenship is 'a right no less precious than life or liberty, indeed of one which today comprehends those rights and almost all others[,]' [and] [b]ecause citizenship is a precious right, 'once citizenship has been acquired, its loss can have severe and unsettling consequences.' "(first quoting Klapprott v. United States, 335 U.S. 601, 616 (1949) (Rutledge, J., concurring); then quoting Fedorenko v. United States, 449 U.S. 490, 505 (1981).

---

[8] Again, the four times argued by Plaintiff are: (1) in 2005, when USCIS initially approved Alawi's citizenship; (2) when USCIS revoked the certificate on August 15, 2019; (3) when USCIS rescinded its revocation on August 13, 2020; and (4) when USCIS requested Alawi appear at a USCIS field office in 2021 to have a " new certificate of citizenship issued." (Mot. 3.)

Thus Defendants have not met their burden in opposing a motion to amend on the grounds of futility due to mootness, and some issues are better addressed in a motion to dismiss. See Friends of the Earth, 528 U.S. at 190; Sinclair, 2021 WL 2948871, at *6; SAES Getters S.p.A., 219 F. Supp. 2d at 1086. Defendants have not shown dismissal is required in a concrete fashion, nor has a motion to dismiss already been adjudicated and futility of amendment then considered when deciding to grant leave. See Castillo-Antonio v. Esperanza, No. 13-CV-05256-JCS, 2015 WL 307372, at *2 (N.D. Cal. Jan. 22, 2015) ("The first theory fails because Defendants have not properly sought dismissal of Plaintiff's original ADA claim (for instance, by way of a summary judgment motion) and there has been no legal determination that the claim is, in fact, moot."); Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 542 (9th Cir. 1989) (affirming dismissal and denial of leave to amend "to file the third amended complaint to set forth the RICO claims; these claims were defective, and would have been subject to dismissal."); Butler v. Robar Enterprises, Inc., 208 F.R.D. 621, 623 (C.D. Cal. 2002) ("A proposed amendment is futile if no set of facts can be proved under the amendment that would constitute a valid claim or defense . . . [and the] party opposing the amendment bears the burden of showing why the amendment should not be granted."); Butler v. Robar Enterprises, Inc., 208 F.R.D. 621, 624–25 (C.D. Cal. 2002) (Butler's proposed amendment to substitute Hove as Defendant Doe I does not relate back to the date of the filing of his Complaint, and thus is barred by the applicable statute of limitations."); Pappy's Barber Shops, Inc. v. Farmers Grp., Inc., 491 F. Supp. 3d 738, 739 (S.D. Cal. 2020) ("Plaintiffs' motion for leave to amend should be denied if the proposed amended complaint does not remedy the deficiencies that caused the Court to dismiss the original complaint.").

### C.  Consideration of all Factors Weigh in Favor of Granting Leave to Amend

In the absence of a showing of prejudice, Defendants have not met their burden of making a strong showing of futility, and accordingly, consideration of the relevant factors dictate that leave to amend should be granted. Eminence Capital, 316 F.3d at 1052 ("Prejudice is the 'touchstone of the inquiry under rule 15(a)[,]' [and] . . . Absent prejudice, or a strong showing of any of the remaining [ ] factors, there exists a *presumption* under Rule 15(a) in favor of granting

leave to amend.") (citations omitted); Sinclair, 2021 WL 2948871, at *6-7 ("Yet, based on Defendants' arguments here, neither standing nor mootness concerns outweigh the Court's 'extreme liberality' in granting leave to amend in the absence of delay, bad faith, dilatory motive, failure to cure prior deficiencies, or undue prejudice . . . Indeed, denial of a motion for leave to amend on the ground of futility is rare and courts generally defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed . . . In other words, Defendants must make a strong showing of futility to defeat the *presumption* under Rule 15(a) in favor of granting leave to amend.") (internal citations and quotation marks omitted).

## IV.

## CONCLUSION AND ORDER

The Court finds that in consideration of the above facts and legal standards, Plaintiffs' motion for leave to file a first amended complaint shall be granted.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for leave to amend (ECF No. 40) is GRANTED; and
2. Plaintiff SHALL FILE a first amended complaint within **five (5) days** of entry of this order.

IT IS SO ORDERED.

Dated:   **August 12, 2021**

UNITED STATES MAGISTRATE JUDGE